

# IN THE
# TENTH COURT OF APPEALS

## No. 10-07-00241-CV

## IN THE GUARDIANSHIP OF
## MARY ELIZABETH JENSEN, AN INCAPACITATED PERSON,

**From the 220th District Court**
**Bosque County, Texas**
**Trial Court No. 01207**

## MEMORANDUM OPINION

This appeal concerns a complaint that the district court abused its discretion in appointing an elderly woman's only child as her guardian. We will affirm.

### Standard of Review

We review a guardianship determination under an abuse-of-discretion standard. *In re Guardianship of Finley*, 220 S.W.3d 608, 612 (Tex. App.—Texarkana 2007, no pet.); *Thedford v. White*, 37 S.W.3d 494, 496 (Tex. App.—Tyler 2000, no pet.). We do not conduct an independent review of findings of fact in such a case under traditional legal and factual sufficiency standards. *Finley*, 220 S.W.3d at 612; *see also In re Marriage of Eilers*, 205 S.W.3d 637, 640 (Tex. App.—Waco 2006, pet. denied) (child support case). Rather, legal and factual sufficiency are factors which can be considered in determining whether an abuse of discretion has occurred. *Id.*

We view the evidence in the light most favorable to the trial court's

decision.  *Paradigm Oil, Inc. v. Retamco Operating, Inc.*, 161 S.W.3d 531, 536 (Tex. App.—San Antonio 2004, pet. denied); *Thedford*, 37 S.W.3d at 496-97. An abuse of discretion does not occur when the trial court's decision is based on conflicting evidence.  *Davis v. Huey*, 571 S.W.2d 859, 862 (Tex. 1978); *Smith v. McCarthy*, 195 S.W.3d 301, 305 (Tex. App.—Fort Worth 2006, pet. denied); *Paul v. Merrill Lynch Trust Co. of Tex.*, 183 S.W.3d 805, 812 (Tex. App.—Waco 2005, no pet.).

*In re Keller*, 233 S.W.3d 454, 459 (Tex. App.—Waco 2007, pet. denied).

## Background

Karie Brothers, the only child of Mary Jensen, filed an application for the appointment of herself as permanent guardian of the person and the estate of Jensen in September 2006.  The county court appointed an attorney ad litem for Jensen.

Jensen, through an attorney that she retained, apparently with the help of her brother Marvin Drews, contested Brothers's application and sought Drews's appointment as Jensen's guardian.  The county court transferred the proceeding to district court, and after an evidentiary hearing, the district court appointed Brothers as Jensen's guardian and, to qualify, required her to live with Jensen in her home in Bosque County and prohibited any change in Jensen's place of residence without prior court approval.  A few months later, the court heard further evidence but did not change Brothers's appointment.  Jensen, through her retained attorney, appeals, arguing in one issue that the district court abused its discretion in appointing Brothers.  Brothers has not filed an appellee's brief.

Brothers sought appointment of herself as Jensen's guardian upon learning of Jensen's diagnosis of mild to moderate Alzheimer's disease/Dementia and because of Jensen's partial incapacity.  Medical records confirmed that diagnosis, and both Jensen's

retained attorney and her attorney ad litem agreed that a guardianship was needed because of Jensen's partial incapacity. Jensen was seventy-one at the time of the hearing; she is a widow with her own home, but it appears that she primarily lived with James Richards, a longtime male friend.

Jensen's brief asserts that the district court abused its discretion because of evidence showing Brothers's alleged financial exploitation of Jensen, her alleged debt to Jensen, her alleged perjury about her address in Tennessee, and Jensen's desire not to have Brothers appointed as her guardian. The evidence was conflicting on all of these allegations.

### Ward's Preference

While Jensen expressed her desire not to have Brothers appointed as her guardian (partly because Jensen did not want to move to Tennessee), the district court also heard testimony of the close mother-daughter relationship between Jensen and Brothers. Brothers testified that in June of 2006, Jensen called her in Tennessee, was very upset and said she had Alzheimer's, and that she was ready to come live with Brothers in Tennessee. Brothers immediately came to see Jensen, but she was at Drews's home. Drews, his wife, and Richards confronted Brothers and accused her of wrongdoing, kept Jensen from Brothers, and would not allow Brothers to speak to Jensen for several months. Brothers then commenced the guardianship proceeding and she said that, at the first hearing in October, Jensen told her that Drews and Richards were angry with Jensen for speaking to and sitting with Brothers. Drews admitted that he typically saw Jensen only on holidays, that he himself was elderly and in poor

health, and that he could not be Jensen's permanent guardian.

At the second evidentiary hearing, the trial court heard evidence of Jensen's displeasure with her lack of freedom now that Brothers was living with her, but Brothers testified about how she and her mother spend their time and how her mother enjoys it. Brothers also testified that Jensen generally is fine unless Drews contacts her and that those contacts lead Jensen to become agitated. Brothers and Drews admittedly do not get along and are estranged, and Drews says he will not work with Brothers to help Jensen adapt to living with Brothers.

The Probate Code requires the court to make a "reasonable effort to consider the incapacitated person's preference of the person to be appointed guardian and, to the extent not inconsistent with other provisions of this chapter, shall give due consideration to the preference indicated by the incapacitated person." TEX. PROB. CODE ANN. § 689 (Vernon 2003). In this case, we find that the court, who actively participated in the two hearings, made such a reasonable effort and gave due consideration to Jensen's preference.

### Alleged Financial Exploitation

Jensen's brief also complains that Brothers financially exploited Jensen. First, Jensen alleges that in 2005, Brothers took Jensen to an attorney to obtain a power of attorney for Brothers, to have Jensen's will changed to leave her entire estate to Brothers and to name Brothers as executor, and to have Jensen deed one-half of her real property (her home and a vacant lot) to Brothers. But Diane Hightower, Jensen's attorney who prepared the legal documents, testified that Jensen, not Brothers, wanted those

documents prepared to avoid probate problems upon Jensen's death, and that she at no time thought Brothers had undue influence on Jensen. Hightower's one limited contact with both Brothers and Jensen led her to believe that they had a loving and caring relationship. There was evidence that Jensen's prior will also left her entire estate to Brothers.

The next allegation is that Brothers caused Jensen to cash out a $77,000 IRA without paying the tax on it, which led Jensen to have to cash out another IRA to pay the tax and penalties. Brothers said that Jensen wanted her to have that money so Brothers and her husband could buy a home in San Antonio that was nice and big enough for Jensen to live with them, but when Brothers's husband's job in San Antonio did not work out, they moved to and bought a home in Tennessee with that money.[1] Brothers testified that she had not been made aware of the tax and penalty bill, that she could not communicate with her mother after she learned about it, and that she would try to help out with it by involving an accountant because, when Jensen cashed the IRA, Brothers did not think there would be tax or a penalty. We disagree with the unsupported conclusion in Jensen's brief that this event left Brothers indebted to Jensen so as to disqualify Brothers from being appointed guardian. *See id*. § 681(5) (providing that person indebted to proposed ward may not be appointed guardian).

Jensen's brief also complains that Brothers bought a car with Jensen's co-signing the note. Brothers, who admitted that she and her husband had filed bankruptcy in

---

[1] Jensen's brief alleges that Brothers perjured herself regarding her Tennessee address because an "internet search" revealed that she lived in Mount Juliet, not Old Hickory. In the second hearing, Brothers explained that her physical address was in Old Hickory and that Mount Juliet is the town right next to Old Hickory.

2005, said that her mother offered to help her buy the car and that Brothers has made every car payment.

Drews and Richards contacted the Texas Department of Protective and Regulatory Services—Adult Protective Services (APS) in June of 2006 and accused Brothers of financially exploiting Jensen by the real property deeds and the IRA. Julie Westerman of APS investigated the complaint, which included a phone conversation with Brothers, who explained the transactions at issue, including lawyer Hightower's involvement with the deeds and the new will. Westerman found evidence of exploitation, concluded that Brothers had "improperly" acquired the IRA funds and one-half of Jensen's real property, and turned it over to law enforcement, but she has no knowledge of what happened thereafter. On cross-examination, Westerman admitted that, in her investigation and in reaching her conclusion, she never talked to Hightower, to Jensen's attorney ad litem, or to Brothers's attorney and that she reached her conclusions primarily on information from Drews, Richards, and Jensen.

The Probate Code provides that a person who, because of inexperience, lack of education, or other good reason, is incapable of properly and prudently managing and controlling the ward or the ward's estate, may not be appointed guardian. *See id*. § 681(7). Based on Brothers's alleged financial exploitation and her recent bankruptcy, Jensen's brief concludes that Brothers was ineligible to be appointed Jensen's guardian. We disagree.

## Conclusion

In this case, the trial court was faced with conflicting evidence. Because we view

the evidence in the light most favorable to the trial court's decision, and an abuse of discretion does not occur when the trial court's decision is based on conflicting evidence, we hold that the trial court did not abuse its discretion in appointing Brothers as the permanent guardian of Jensen's person and estate. *See Keller*, 233 S.W.3d at 459.

We overrule the sole issue on appeal and affirm the trial court's order.


BILL VANCE
Justice


Before Chief Justice Gray,
　　　Justice Vance, and
　　　Justice Reyna
Affirmed
Opinion delivered and filed November 26, 2008
[CV06]