IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-07-00241-CV

 

In
the Guardianship of

Mary
Elizabeth Jensen, an Incapacitated Person,

 

 

 



From the 220th District
Court

Bosque County, Texas

Trial Court No. 01207

 



MEMORANDUM  Opinion



 

This appeal concerns a complaint that
the district court abused its discretion in appointing an elderly woman’s only
child as her guardian.  We will affirm.

Standard of Review

 

We review a guardianship determination
under an abuse-of-discretion standard.  In re Guardianship of Finley, 220
S.W.3d 608, 612 (Tex. App.—Texarkana 2007, no pet.); Thedford v. White,
37 S.W.3d 494, 496 (Tex. App.—Tyler 2000, no pet.).  We do not conduct an
independent review of findings of fact in such a case under traditional legal
and factual sufficiency standards.  Finley, 220 S.W.3d at 612; see
also In re Marriage of Eilers, 205 S.W.3d 637, 640 (Tex. App.—Waco 2006,
pet. denied) (child support case).   Rather, legal and factual sufficiency are
factors which can be considered in determining whether an abuse of discretion
has occurred.  Id.

 

            We view the evidence in the
light most favorable to the trial court’s decision.  Paradigm Oil, Inc. v.
Retamco Operating, Inc., 161 S.W.3d 531, 536 (Tex. App.—San Antonio 2004,
pet. denied); Thedford, 37 S.W.3d at 496-97.  An abuse of discretion
does not occur when the trial court’s decision is based on conflicting
evidence.  Davis v. Huey, 571 S.W.2d 859, 862 (Tex. 1978); Smith v.
McCarthy, 195 S.W.3d 301, 305 (Tex. App.—Fort Worth 2006, pet. denied); Paul
v. Merrill Lynch Trust Co. of Tex., 183 S.W.3d 805, 812 (Tex. App.—Waco
2005, no pet.).

 

In re Keller, 233 S.W.3d 454, 459 (Tex. App.—Waco
2007, pet. denied).

Background

Karie Brothers, the only child of Mary
Jensen, filed an application for the appointment of herself as permanent
guardian of the person and the estate of Jensen in September 2006.  The county
court appointed an attorney ad litem for Jensen.

Jensen, through an attorney that she
retained, apparently with the help of her brother Marvin Drews, contested
Brothers’s application and sought Drews’s appointment as Jensen’s guardian. 
The county court transferred the proceeding to district court, and after an
evidentiary hearing, the district court appointed Brothers as Jensen’s guardian
and, to qualify, required her to live with Jensen in her home in Bosque County
and prohibited any change in Jensen’s place of residence without prior court
approval.  A few months later, the court heard further evidence but did not
change Brothers’s appointment.  Jensen, through her retained attorney, appeals,
arguing in one issue that the district court abused its discretion in
appointing Brothers.  Brothers has not filed an appellee’s brief.

 Brothers sought appointment of herself
as Jensen’s guardian upon learning of Jensen’s diagnosis of mild to moderate
Alzheimer’s disease/Dementia and because of Jensen’s partial incapacity. 
Medical records confirmed that diagnosis, and both Jensen’s retained attorney
and her attorney ad litem agreed that a guardianship was needed because of
Jensen’s partial incapacity.  Jensen was seventy-one at the time of the
hearing; she is a widow with her own home, but it appears that she primarily
lived with James Richards, a longtime male friend.

Jensen’s brief asserts that the district
court abused its discretion because of evidence showing Brothers’s alleged
financial exploitation of Jensen, her alleged debt to Jensen, her alleged
perjury about her address in Tennessee, and Jensen’s desire not to have
Brothers appointed as her guardian.  The evidence was conflicting on all of
these allegations.

Ward’s Preference

While Jensen expressed her desire not to
have Brothers appointed as her guardian (partly because Jensen did not want to
move to Tennessee), the district court also heard testimony of the close
mother-daughter relationship between Jensen and Brothers.  Brothers testified
that in June of 2006, Jensen called her in Tennessee, was very upset and said
she had Alzheimer’s, and that she was ready to come live with Brothers in
Tennessee.  Brothers immediately came to see Jensen, but she was at Drews’s
home.  Drews, his wife, and Richards confronted Brothers and accused her of
wrongdoing, kept Jensen from Brothers, and would not allow Brothers to speak to
Jensen for several months.  Brothers then commenced the guardianship proceeding
and she said that, at the first hearing in October, Jensen told her that Drews
and Richards were angry with Jensen for speaking to and sitting with Brothers. 
Drews admitted that he typically saw Jensen only on holidays, that he himself
was elderly and in poor health, and that he could not be Jensen’s permanent
guardian.

At the second evidentiary hearing, the
trial court heard evidence of Jensen’s displeasure with her lack of freedom now
that Brothers was living with her, but Brothers testified about how she and her
mother spend their time and how her mother enjoys it.  Brothers also testified
that Jensen generally is fine unless Drews contacts her and that those contacts
lead Jensen to become agitated.  Brothers and Drews admittedly do not get along
and are estranged, and Drews says he will not work with Brothers to help Jensen
adapt to living with Brothers.

The Probate Code requires the court to make a “reasonable effort to consider the
incapacitated person’s preference of the person to be appointed guardian and,
to the extent not inconsistent with other provisions of this chapter, shall
give due consideration to the preference indicated by the incapacitated
person.”  Tex. Prob. Code Ann. §
689 (Vernon 2003).  In this case, we find that the court, who actively
participated in the two hearings, made such a reasonable effort and gave due
consideration to Jensen’s preference.

Alleged Financial Exploitation

Jensen’s brief also complains that
Brothers financially exploited Jensen.  First,  Jensen alleges that in 2005,
Brothers took Jensen to an attorney to obtain a power of attorney for Brothers,
to have Jensen’s will changed to leave her entire estate to Brothers and to
name Brothers as executor, and to have Jensen deed one-half of her real property
(her home and a vacant lot) to Brothers.  But Diane Hightower, Jensen’s
attorney who prepared the legal documents, testified that Jensen, not Brothers,
wanted those documents prepared to avoid probate problems upon Jensen’s death,
and that she at no time thought Brothers had undue influence on Jensen. 
Hightower’s one limited contact with both Brothers and Jensen led her to
believe that they had a loving and caring relationship.  There was evidence
that Jensen’s prior will also left her entire estate to Brothers.

The next allegation is that Brothers
caused Jensen to cash out a $77,000 IRA without paying the tax on it, which led
Jensen to have to cash out another IRA to pay the tax and penalties.  Brothers
said that Jensen wanted her to have that money so Brothers and her husband
could buy a home in San Antonio that was nice and big enough for Jensen to live
with them, but when Brothers’s husband’s job in San Antonio did not work out,
they moved to and bought a home in Tennessee with that money.[1] 
Brothers testified that she had not been made aware of the tax and penalty
bill, that she could not communicate with her mother after she learned about
it, and that she would try to help out with it by involving an accountant
because, when Jensen cashed the IRA, Brothers did not think there would be tax
or a penalty.  We disagree with the unsupported conclusion in Jensen’s brief
that this event left Brothers indebted to Jensen so as to disqualify Brothers
from being appointed guardian.  See id. § 681(5) (providing that
person indebted to proposed ward may not be appointed guardian).

Jensen’s brief also complains that
Brothers bought a car with Jensen’s co-signing the note.  Brothers, who
admitted that she and her husband had filed bankruptcy in 2005, said that her
mother offered to help her buy the car and that Brothers has made every car
payment.

Drews and Richards contacted the Texas
Department of Protective and Regulatory Services—Adult Protective Services
(APS) in June of 2006 and accused Brothers of financially exploiting Jensen by
the real property deeds and the IRA.  Julie Westerman of APS investigated the
complaint, which included a phone conversation with Brothers, who explained the
transactions at issue, including lawyer Hightower’s involvement with the deeds
and the new will.  Westerman found evidence of exploitation, concluded that
Brothers had “improperly” acquired the IRA funds and one-half of Jensen’s real
property, and turned it over to law enforcement, but she has no knowledge of
what happened thereafter.  On cross-examination, Westerman admitted that, in
her investigation and in reaching her conclusion, she never talked to
Hightower, to Jensen’s attorney ad litem, or to Brothers’s attorney and that
she reached her conclusions primarily on information from Drews, Richards, and
Jensen.

The Probate Code provides that a person
who, because of inexperience, lack of education, or other good reason, is
incapable of properly and prudently managing and controlling the ward or the
ward's estate, may not be appointed guardian.  See id. § 681(7).  Based on Brothers’s alleged financial exploitation and
her recent bankruptcy, Jensen’s brief concludes that Brothers was ineligible to
be appointed Jensen’s guardian.  We disagree.

Conclusion

In this case, the trial court was faced with conflicting
evidence.  Because we
view the evidence in the light most favorable to the trial court’s decision,
and an abuse of discretion does not occur when the trial court’s decision is
based on conflicting evidence, we hold that the trial court did not abuse its
discretion in appointing Brothers as the permanent guardian of Jensen’s person
and estate.  See Keller, 233 S.W.3d at 459.

We overrule the sole issue on appeal and
affirm the trial court’s order.

 

BILL VANCE

Justice

 

 

Before Chief
Justice Gray,

            Justice
Vance, and

            Justice
Reyna

Affirmed

Opinion
delivered and filed November 26, 2008

[CV06]








 









[1]
Jensen’s brief alleges that Brothers perjured herself regarding her Tennessee
address because an “internet search” revealed that she lived in Mount Juliet,
not Old Hickory.  In the second hearing, Brothers explained that her physical
address was in Old Hickory and that Mount Juliet is the town right next to Old
Hickory.