

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

NO. 2-09-155-CV

HARLON H. COLEMAN          APPELLANT

V.

MELINDA F. COLEMAN          APPELLEE

------------

FROM THE 322ND DISTRICT COURT OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

------------

### I.  Introduction

In three issues, Appellant Harlon H. Coleman asserts that the trial court erred by awarding spousal maintenance to Appellee Melinda F. Coleman in their divorce decree.  We affirm in part and reverse and remand in part.

---

[1] *See* Tex. R. App. P. 47.4.

## II. Factual and Procedural History

Harlon and Melinda married on November 22, 1985. On June 1, 2007, Harlon filed for divorce. Twenty days later, Melinda entered a general denial. On November 10, 2008, Melinda filed a counterpetition for divorce requesting, among other things, spousal maintenance. Harlon responded with a motion to strike, alleging surprise and lack of discovery. Harlon and Melinda both testified at the November 13, 2008 bench trial.

### A. Harlon's Employment

Harlon testified that he works as a maintenance technician at Alcon Laboratories and grosses $1,572 per week; by trial, he had worked there for seven years. In 2007, he reported a little over $109,000 in income. He testified that, during the eighteen months they had been separated, he had given Melinda approximately $29,000 in cash for maintenance and that he had moved out of the marital residence, allowing her to live there while he continued to pay the monthly mortgage payment.[2]

---

[2] Melinda moved out of the marital residence in June or July 2008 because of a conflict with their son, who was living there at the time, and moved in with her parents.

B. Melinda's Employment

Melinda had been certified to be a nursing home activity director and had worked in that field, making $10 an hour, around nine years before trial. But for most of their son's life, she was a stay-at-home mother.[3]

According to Harlon, Melinda had not sought employment since they separated; prior to his filing for divorce, Melinda worked at Alcon Laboratories full-time in a temporary position as a Quality Assurance analyst making $20 an hour for around three or four months. Melinda had earned approximately $10,000 while working at Alcon in the two years before trial.

Harlon testified that Melinda's temporary position with Alcon had the potential to become a permanent full-time position and that the temporary employee that replaced her at Alcon had become a full-time employee. Melinda testified that the Alcon position was temporary and that there were never any discussions that it would become permanent. Melinda testified that she quit the Alcon job because a co-worker lied about her, making her "working circumstances very difficult" and causing her stress. She testified that the reason she gave Alcon for leaving was "[c]onflict issues with co-worker" and that she just quit.

---

[3] Harlon testified that he and Melinda have a twenty-year-old son who is in college and who Harlon supports by paying his rent, car payment, and automobile insurance.

Since the separation, Melinda had earned approximately $500 by providing travel and transportation assistance for elderly persons. Melinda testified that she had not kept her activity director certification current. She testified that she had a strong desire to be a missionary, which required sixteen months of training.

## C. Trial Court's Decision

After taking the matter under advisement, the trial court issued a letter ruling on November 13, 2008, denying Harlon's motion to strike, ordering a distribution of the marital estate that roughly equalized the assets and liabilities apportioned to each party, and ordering Harlon to pay Melinda $1,000 per month in spousal maintenance for twenty months. On May 8, 2009, the trial court signed a final decree of divorce incorporating these orders and granting divorce on the ground of insupportability. This appeal followed.

## III. Spousal Maintenance

In his third issue, Harlon asserts that there is insufficient evidence to overcome the presumption under section 8.053(a) of the family code that spousal maintenance is not warranted.

## A. Standard of Review

A trial court's award of spousal maintenance is subject to an abuse of discretion review. *Brooks v. Brooks*, 257 S.W.3d 418, 425 (Tex. App.—Fort

Worth 2008, pet. denied) (citing *Chafino v. Chafino*, 228 S.W.3d 467, 474 (Tex. App.—El Paso 2007, no pet.)).  The trial court may exercise its discretion to award spousal maintenance if the party seeking maintenance meets specific eligibility requirements.  *Id.* (citing *Crane v. Crane,* 188 S.W.3d 276, 278 (Tex. App.—Fort Worth 2006, pet. denied)).  When there is no evidence or insufficient evidence to support a spousal maintenance claim, a trial court abuses its discretion by granting spousal maintenance.  *See Dunn v. Dunn*, 177 S.W.3d 393, 397 (Tex. App.—Houston [1st Dist.] 2005, pet. denied).

Under the abuse of discretion standard, legal and factual sufficiency of the evidence are not independent grounds for asserting error, but they are relevant factors in assessing whether the trial court abused its discretion. *Brooks*, 257 S.W.3d at 425.  To determine whether there has been an abuse of discretion because the evidence is legally or factually insufficient to support the trial court's decision, we engage in a two-pronged inquiry:  (1) did the trial court have sufficient evidence upon which to exercise its discretion, and (2) did the trial court err in its application of that discretion?  *Boyd v. Boyd*, 131 S.W.3d 605, 611 (Tex. App.—Fort Worth 2004, no pet.); *see also Moroch v. Collins*, 174 S.W.3d 849, 857 (Tex. App.—Dallas 2005, pet. denied).

B. Family Code Section 8.053(a)

Family code section 8.053(a) creates a presumption that spousal maintenance is not warranted unless the spouse seeking the maintenance has exercised diligence in either "(1) seeking suitable employment; or (2) developing the necessary skills to become self-supporting during a period of separation and during the time the suit for dissolution of the marriage is pending."[4] Tex. Fam. Code Ann. § 8.053(a) (Vernon 2006).

C. The Evidence

The only testimony pertinent to our inquiry came from Melinda under direct examination:

Q. . . . When was the last time you were working . . . [as a nursing home activities director]?

A. Nine years ago.

Q. All right. How am I going to put this. And so, let's say, when you and your husband separated 18 months ago or two years ago even, what would it have taken two years ago for you to get your certification back?

---

[4] The presumption applies to maintenance under section 8.051(2), which states that in a suit for dissolution of a marriage, the court may order maintenance for either spouse only if the marriage lasted ten years or longer, the spouse seeking maintenance lacks sufficient property to provide for the spouse's minimum reasonable needs, and the spouse seeking maintenance "clearly lacks earning ability in the labor market adequate to provide support for the spouse's minimum reasonable needs." *See* Tex. Fam. Code Ann. § 8.051(2)(C) (Vernon 2006).

A. I would have had to have done some type of continuing education. I don't know what that is. I haven't checked into it.

Q. Why didn't you check into it?

A. Because I don't want to do that.

Q. *What is it that you want to do?*

A. *I want to go into the mission field and be a missionary.*

Q. *Okay. And you have looked into that?*

A. *Yes. I have.*

Q. *Roughly how long does that training take?*

A. *There's different time periods. The one I'm looking at now is 16 months.*

Q. Okay. And you'd rather do that than try to catch up on nine years of continuing legal—continuing education for being an activities director?

A. Yes. [Emphasis supplied.]

Melinda also testified that in the two years prior to trial she had made about $500 providing travel and transportation assistance to the elderly, but she testified further as follows:

Q. So, it's obvious you can't make a living doing that?

A. No, it wasn't for the money. I didn't do it for the money.

Q. You did it—why did you do it then?

A. Because it is what I was lead to do and meant to do.

7

Q. You were just helping them out?

A. Yeah.

D. Analysis

Melinda cites *In re Marriage of McFarland*, 176 S.W.3d 650 (Tex. App.—Texarkana 2005, no pet.), to support her argument that the foregoing testimony is sufficient to rebut the statutory presumption. In that case, the wife

> testified that she had been a homemaker for most of the marriage, had allowed her manicurist's license to expire several years ago, and had only recently been able to find employment (from which she earned between $7.00 and $9.00 per hour because of her limited education, training, experience, and lack of professional licensure).

*Id*. at 653–54. In its conclusions of law, the trial court found, "Susan McFarland had exercised due diligence in attempting during the pendency of the divorce to obtain suitable employment." *Id*. at 654. Based on the foregoing, the appellate court affirmed the award of spousal maintenance. *Id*. at 659–60.

In *In re Marriage of Eliers*, the wife testified that following the couple's separation, she secured a low paying job in a grocery store that barely covered her rent. 205 S.W.3d 637, 646 (Tex. App.—Waco 2006, pet. denied). Her van was repossessed because of her inability to make monthly payments, and the lack of transportation and her child-rearing responsibilities prevented her from being able to pursue job training. She had explored other jobs in the

vicinity without success. The court concluded that the trial court did not abuse its discretion by finding that she overcame the statutory presumption against spousal maintenance "because she provided ample evidence that she ha[d] exercised diligence in seeking suitable employment under her circumstances." *Id.*

In comparison to the cases above, Melinda's only testimony in support of her spousal maintenance claim was that she had "looked into" going into the mission field—which required sixteen months of training—and that she had made $500 in the previous two years by transporting people—work that she did not do for the money. In light of the statutory language and the cases above, we hold that there was insufficient evidence upon which the trial court could exercise its discretion to award spousal maintenance. Therefore, the trial court erred by awarding spousal maintenance. We sustain Harlon's third issue.[5]

---

[5] Because Harlon challenged the trial court's award of spousal maintenance on the ground that there was insufficient evidence, his remedy is a new trial on the issue of spousal maintenance. *See Glover v. Tex. Gen. Indem. Co.*, 619 S.W.2d 400, 401–02 (Tex. 1981) (holding that if the court of appeals sustains an issue or point because the evidence is factually insufficient, it must reverse the judgment of the trial court and remand for new trial); *but cf. Watson v. Watson*, 286 S.W.3d 519, 523, 525 (Tex. App.—Fort Worth 2009, no pet.) (reversing and rendering judgment when appellant complained that, rather than insufficient evidence, there was no evidence to support the award of spousal maintenance).

IV.  Conclusion

Harlon's third issue is dispositive.  Having sustained that issue, we need not reach his first two issues.  *See* Tex.  R.  App.  P.  47.1.  We affirm the trial court's divorce decree except for the part pertaining to spousal maintenance. We reverse the portion of the decree granting spousal maintenance and remand this case to the trial court for a new trial solely on the issue of spousal maintenance.

BOB MCCOY
JUSTICE

PANEL: DAUPHINOT, MCCOY, and MEIER, JJ.

DELIVERED:  December 10, 2009

10