In the Matter of Jewel W. KELLER, An Incapacitated Person.

No. 10–04–00118–CV.

Court of Appeals of Texas, Waco.

Aug. 1, 2007.

David J. Patton, Fort Worth, for appellant.

Scott D. Allen, Stephenville, for appellee.

Connie White, Crouch & White, Hamilton, for other.

Before Chief Justice GRAY, Justice VANCE, and Justice REYNA.

## OPINION

FELIPE REYNA, Justice.

Cynthia Zipp brings this appeal from an order removing her as guardian of the person and estate of Jewel W. Keller, an incapacitated person, and appointing Alisa Wuemling in her place. Zipp contends in four issues that: (1) the constitutional county court erred by transferring the matter to a district court rather than requesting the assignment of a statutory probate court judge; (2) the district court abused its discretion by denying her request for production and granting Wuemling's motion for protective order; (3) the district court abused its discretion by sustaining Wuemling's objection to questioning regarding Wuemling's contention that she is Keller's step-granddaughter;[1] and (4) the district court abused its discretion by removing her as guardian. We will affirm.

On original submission, this Court, with Chief Justice Gray dissenting, dismissed the appeal as moot because of the death of the ward of the estate. *See In re Guardianship of Keller,* 171 S.W.3d 498 (Tex. App.-Waco 2005). The Supreme Court reversed and remanded, holding that "two of Zipp's issues remain in controversy: (1) whether the district court properly removed Zipp as guardian, and (2) whether Zipp has a legally cognizable interest in fees and costs." *Zipp v. Wuemling,* 218 S.W.3d 71, 74 (Tex.2007) (per curiam). Therefore, we will address the merits of the issues presented in Zipp's brief to the extent those issues pertain to the question of whether she was properly removed.[2]

## Background

Wuemling's mother Wilda Griffin instituted this proceeding in March 2002 seeking to be appointed as Keller's temporary guardian. The constitutional county court appointed Griffin as temporary guardian of Keller's person and estate. Two months later, Gwen Seymour was appointed as permanent guardian of Keller's person and estate. Citing "poor health" on Seymour's part, Seymour and Zipp together filed an application for Zipp's appointment as successor guardian about one year after Seymour's appointment. The county court granted this application.

Zipp filed an application to sell Keller's 1997 Lincoln Town Car and her 1994 Ford F-150 pickup and to apply the proceeds to Keller's care and maintenance. Griffin, Wuemling, and other family members filed a document with the county court alleging: (1) Keller was competent; (2) Keller desired to live in her home in Hico rather than twenty miles away in a Stephenville nursing home; (3) Keller's assets were "being depleted rapidly with legal expenses and medical expense which may or may not be necessary"; and (4) Keller should be given "an independent professional evaluation" to determine whether she was incompetent. Wuemling also sent a letter to the judge, asking him to "fully review" the case and do what was in Keller's best interest.

The county court granted Zipp's application to sell the vehicles. Zipp filed a re-

---

1. This "third issue" is not specifically listed in the introductory portion of Zipp's brief stating the issues presented. *See* TEX.R.APP. P. 38.1(e). Nevertheless, it is separately briefed on pages 19–22 of her brief.

2. As the Supreme Court explained, the second issue which remains in controversy (Zipp's "legally cognizable interest in guardian fees, attorney's fees, and costs") depends on whether she was properly removed as guardian. *See Zipp v. Wuemling,* 218 S.W.3d 71, 72–73 (Tex.2007) (per curiam). Thus, our primary focus is the propriety of Zipp's removal.

port regarding the sale of the vehicles for $10,200, and the court entered decrees confirming their sale.

Wuemling then filed an application to remove Zipp as guardian and appoint herself as successor guardian. Zipp responded with a general denial. After setting the matter for hearing, the county court signed an order transferring the removal dispute to the district court. Zipp filed a continuance motion and a request for the appointment of a statutory probate judge three days later. Zipp later served a request for production on Wuemling. Wuemling filed an objection to Zipp's continuance request and a motion for a protective order regarding the request for production. The district court granted the continuance motion and Wuemling's motion for a protective order. After a bench trial, the district court ordered Zipp's removal and appointed Wuemling as successor guardian.

### Transfer to District Court

Zipp contends in her first issue that (a) the county court erred by transferring the matter to district court on its own motion and (b) the "district court erred in accepting the transfer of the entire case instead of just Appellee's original complaint" (*i.e.,* the application for Zipp's removal).

The version of section 606(b) of the Probate Code applicable to this case provides in pertinent part:

in contested guardianship matters, the judge of the county court may on the judge's own motion, or shall on the motion of any party to the proceeding, according to the motion, request as provided by Section 25.0022, Government Code, the assignment of a statutory probate court judge to hear the contested portion of the proceeding, or transfer the contested portion of the proceeding to the district court, which may hear the transferred contested matters as if originally filed in the district court. If the judge of the county court has not transferred a contested guardianship matter to the district court at the time a party files a motion for assignment of a statutory probate court judge, the county judge shall grant the motion and may not transfer the matter to the district court unless the party withdraws the motion.

Act of May 1, 2001, 77th Leg., R.S., ch. 63, § 2, 2001 Tex. Gen. Laws 104, 105 (amended 2003)[3] (current version at Tex. Prob. Code Ann. § 606(b), (b–1) (Vernon Supp. 2006)).

■ Zipp's motion for the appointment of a statutory probate court judge was not filed until after the county court had already transferred the matter to the district court. Thus, the county court did not err by transferring the matter to the district court.

■ Zipp also contends that the district court exceeded the scope of its jurisdiction by accepting the transfer of the entire guardianship proceeding rather than just Wuemling's application for her removal. However, Zipp does not refer to any particular ruling which the district court made as being beyond the scope of its jurisdic-

---

3. Section 606(b) applies to "those counties in which there is no statutory probate court, county court at law, or other statutory court exercising the jurisdiction of a probate court." Act of May 1, 2001, 77th Leg., R.S., ch. 63, § 2, 2001 Tex. Gen. Laws 104, 105 (amended 2003) (current version at Tex. Prob. Code Ann. § 606(b) (Vernon Supp.2006)).

The 2003 amendments apply to any guardianship proceeding "commenced on or after the effective date of this Act" which was September 1, 2003. Act of May 30, 2003, 78th Leg., R.S., ch. 549, §§ 34(a), 40, 2003 Tex. Gen. Laws 1858, 1870–71. Because the Keller guardianship proceeding was commenced in 2002, these amendments do not apply.

tion. It appears that Zipp's complaint is directed primarily at the county court's refusal to consider her application for authority to rent Keller's home, which Zipp filed with the county court after the transfer. Instead of ruling on this application, the county court signed an order transferring it to the district court. However, the district court never ruled on Zipp's application to rent Keller's home.

The issue of Zipp's authority to rent Keller's home has no bearing on "(1) whether the district court properly removed Zipp as guardian, [or] (2) whether Zipp has a legally cognizable interest in fees and costs." *See Zipp*, 218 S.W.3d at 74. Therefore, this portion of Zipp's first issue has been rendered moot by Keller's death.

Accordingly, we overrule Zipp's first issue.

### Protective Order

■ Zipp contends in her second issue that the court abused its discretion by granting Wuemling's motion for a protective order. Wuemling sought a protective order from Zipp's request for production which sought production of a broad array of financial, medical, legal and personal documents. Zipp argues that the requested financial documents are relevant to Wuemling's ability to manage her own financial affairs and by extension Keller's finances and the requested medical documents are relevant to whether Wuemling may have some medical condition which renders her "disqualified" to serve as guardian.

Zipp's request for production sought documents relevant to Wuemling's suitability and qualifications to serve as a succes-

sor guardian. The request for production has no bearing on "(1) whether the district court properly removed Zipp as guardian, [or] (2) whether Zipp has a legally cognizable interest in fees and costs." *See Zipp*, 218 S.W.3d at 74. Therefore, we dismiss Zipp's second issue as moot. *See Nu–Way Energy Corp. v. Delp*, 205 S.W.3d 667, 674 (Tex.App.-Waco 2006, pet. denied).

### Exclusion of Evidence

Zipp contends in her third issue that the court abused its discretion by sustaining Wuemling's objection to questioning regarding Wuemling's contention that she is Keller's step-granddaughter. Wuemling alleges that her mother Wilda Griffin is Keller's step-daughter. This allegation relates to Wuemling's contention that Zipp should be removed as guardian because Wuemling had a prior right to appointment as successor guardian which she had not waived. *See* Tex. Prob.Code Ann. § 759(b) (Vernon 2003). However, the court did not find for Wuemling on this contention. Therefore, Zipp cannot have been harmed by the court's ruling. *See* Tex.R.App. P. 44.1(a)(1). Accordingly, we overrule Zipp's third issue.

### Removal of Guardian

Zipp contends in her fourth issue that the court abused its discretion by removing her as guardian. In particular, Zipp argues that there is factually insufficient evidence: (1) that she cruelly treated Keller or neglected to educate or maintain Keller as liberally as permitted by the means of the estate or by Keller's ability or condition; or (2) that she interfered with Keller's progress or participation in community programs.[4]

4. Zipp raises several additional challenges to the court's findings which we do not address because the additional challenges do not relate to the statutory grounds for removal relied on by the court.

We review a guardianship determination under an abuse-of-discretion standard. *In re Guardianship of Finley*, 220 S.W.3d 608, 612 (Tex.App.-Texarkana 2007, no pet.); *Thedford v. White*, 37 S.W.3d 494, 496 (Tex.App.-Tyler 2000, no pet.). We do not conduct an independent review of findings of fact in such a case under traditional legal and factual sufficiency standards. *Finley*, 220 S.W.3d at 612; *see also In re Marriage of Eilers*, 205 S.W.3d 637, 640 (Tex.App.-Waco 2006, pet. denied) (child support case). Rather, legal and factual sufficiency are factors which can be considered in determining whether an abuse of discretion has occurred. *Id.*

We view the evidence in the light most favorable to the trial court's decision. *Paradigm Oil, Inc. v. Retamco Operating, Inc.*, 161 S.W.3d 531, 536 (Tex.App.-San Antonio 2004, pet. denied); *Thedford*, 37 S.W.3d at 496–97. An abuse of discretion does not occur when the trial court's decision is based on conflicting evidence. *Davis v. Huey*, 571 S.W.2d 859, 862 (Tex. 1978); *Smith v. McCarthy*, 195 S.W.3d 301, 305 (Tex.App.-Fort Worth 2006, pet. denied); *Paul v. Merrill Lynch Trust Co. of Tex.*, 183 S.W.3d 805, 812 (Tex.App.-Waco 2005, no pet.).

The applicable version of section 761(c)(6) of the Probate Code authorizes the removal of a guardian who "cruelly treats the ward, or neglects to educate or maintain the ward as liberally as the means of the ward's estate and the ward's ability or condition permit." Act of May 9, 2001, 77th Leg., R.S., ch. 217, § 15, 2001 Tex. Gen. Laws 410, 419–20 (amended 2005)[5] (current version at TEX. PROB.CODE ANN. § 761(c)(6), (6–a) (Vernon Supp.2006)) (hereinafter, "TEX. PROB.CODE ANN.

§ 761(c)(6)"). The court made the following findings to support its determination that removal was authorized under this provision:

- Zipp has allowed the Ward to reside under circumstances which are not conducive to her mental health or personal hygiene;

- Zipp has retained the Ward in a locked unit at a nursing center away from her primary residence and friends which denied her access to her church and other community activities which would be beneficial to the Ward and has made it inconvenient and inaccessible to the Ward's friends, relatives and acquaintances to visit with the Ward; and

- Zipp has failed to have the Ward evaluated medically as liberally as the means of the Ward and the conditions of the Ward's Estate permit.

Several witnesses testified that it would be more beneficial for Keller to live in a nursing home in Hico, closer to her family, friends, and acquaintances. They explained that it was difficult for many of Keller's elderly friends to make the trip to Stephenville. Her treating physician testified that he was willing to consider more interaction with people with whom Keller was familiar and that additional face-to-face contacts might help with her depression and dementia symptoms. Wuemling and Keller's nephew Gregory Winkles both testified that it would be beneficial for Keller to be evaluated by a different physician who might recommend a different course of treatment. Keller's treating physician stated that he "always welcome[s] a second opinion" and agreed that

---

5. The 2005 amendments apply to any motion for removal of a guardian "made or filed on or after the effective date of this Act" which was September 1, 2005. Act of May 12, 2005, 79th Leg., R.S., ch. 127, §§ 2, 3, 2005 Tex. Gen. Laws 260, 261. Because Wuemling filed her motion to remove Zipp as guardian in 2003, these amendments do not apply.

a geriatric center might provide a more extensive evaluation of Keller's condition and that geriatric specialists may prescribe a different regimen.

Zipp testified that she was satisfied with Keller's current regimen and believed her current placement was appropriate. Zipp desired to have Keller evaluated for hospice care because of the marked decline in Keller's health in the weeks before trial. The director of nurses for Keller's nursing home testified that Keller's health had declined to the point where she could no longer care for herself. She explained that it was necessary to house patients like Keller in a secure area for their own safety.

The record contains conflicting evidence regarding whether Zipp and the nursing home staff were adequately providing for Keller's personal grooming needs, whether she had adequate clothing, and whether her living conditions were sanitary. Wuemling testified that Keller had always been particular about her appearance and liked to dress nicely, to fix her hair nicely, and to wear makeup. According to Wuemling, however, Keller's hair was always a mess at the nursing home, and Zipp had failed to purchase any new clothes for her. Another witness testified that there was a "stench" in Keller's area of the nursing home related to "her hygiene and different things." Conversely, Zipp and other witnesses testified that Keller had her hair and nails done once a week and that the sanitary conditions in the nursing home were appropriate. Zipp also stated that Keller had plenty of clothes.

Finally, a witness testified that a former male employee of the nursing home engaged in inappropriate behavior with Keller, trying to bathe her. Law enforcement was contacted, and the employee was terminated. Zipp disputed this testimony and contended that the nursing home investigated the matter and found no evidence to substantiate these claims.

The record does not in any sense contain overwhelming evidence to support Zipp's removal as guardian. Nevertheless, we must view the evidence in the light most favorable to the court's decision, and if that decision is based on conflicting evidence, no abuse of discretion is shown.

Based on the evidence recited, we cannot say that the court abused its discretion to conclude that Zipp had failed to maintain Keller "as liberally as the means of the ward's estate and the ward's ability or condition permit." *See* Tex. Prob.Code Ann. § 761(c)(6). In light of this conclusion, we need not determine whether the court abused its discretion by finding in Wuemling's favor on the other grounds for removal alleged.

Accordingly, we overrule Zipp's fourth issue and affirm the judgment.