# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-08-00592-CV

**Royce Witte, Appellant**

**v.**

**Edward Witte, Appellee**

## FROM THE DISTRICT COURT OF LEE COUNTY, 335TH JUDICIAL DISTRICT
## NO. 13,273, HONORABLE TERRY L. FLENNIKEN, JUDGE PRESIDING

## M E M O R A N D U M  O P I N I O N

This suit involves the reimbursement of attorneys' fees incurred by the guardian of an incapacitated person. The district court ordered reimbursement from the guardianship estate. We affirm.

Anna Mae Bridges Witte is the widowed mother of two living, adult children, appellee Edward Witte and appellant Royce Witte. On April 20, 2006, when his mother was 86 years old, Edward filed an application in county court for his appointment as temporary guardian of her person and estate. Edward was appointed temporary guardian by the county court and, on October 5, 2006, was appointed permanent guardian.

During the guardianship, there were disputes between Edward and Royce regarding certain property owned by Mrs. Witte. Edward sought to require Royce to return money that he had withdrawn from their mother's checking account prior to Edward's appointment as temporary

guardian. Royce, in turn, opposed Edward's attempt, while permanent guardian, to purchase their mother's 204-acre ranch property. The case was transferred to district court, *see* Tex. Prob. Code Ann. § 606(b)(2) (West Supp. 2009), and on July 31, 2007, Edward and Royce entered into a "Mediated Settlement Agreement" under which (1) a request would be made to the district court for the appointment of a neutral third party as successor guardian, upon which Edward would resign as guardian, (2) Royce would make a one-time payment of $67,136.04 to the successor guardian and would execute and deliver to the successor guardian a note in the principal amount of $27,863.96, and (3) the successor guardian would sell the ranch property to a bona fide purchaser. Moreover, under the agreement, any claim for reimbursement of attorneys' fees by the guardian would not be pursued until after the appointment of the successor guardian.

On September 6, 2007, the district court approved the agreement and appointed Gary Fields as successor guardian of the person and estate of Mrs. Witte. Edward applied for reimbursement from the guardianship estate of attorneys' fees he incurred in his capacity as guardian. On June 23, 2008, the district court ordered the successor guardian to pay Edward $32,601.64 as reimbursement of attorneys' fees and expenses. Royce appeals the order of the district court.

As an initial matter, Edward argues that Royce does not have standing to appeal the district court's order and, therefore, this Court lacks subject-matter jurisdiction. An appealing party may not complain of errors that do not injuriously affect him or that merely affect the rights of others. *Torrington Co. v. Stutzman*, 46 S.W.3d 829, 843 (Tex. 2000). Edward contends that the only parties whose interests were affected by the district court's order were Edward and the estate of Mrs. Witte. However, Royce is an "interested person" as defined in the Texas Probate

2

Code. *See* Tex. Prob. Code Ann. § 601(15) (West Supp. 2009) (including in the definition "a person interested in the welfare of an incapacitated person"). Given that Royce, as the ward's son, had sufficient interest to participate in the guardianship proceedings, *see id.* § 642(a) (West 2003), and contest the reimbursement of Edward's attorneys' fees before the district court, *see id.* § 601(15), we conclude that Royce likewise had standing to file this appeal of the district court's order to reimburse Edward's attorneys' fees. *See Torrington Co.*, 46 S.W.3d at 843 ("[A] party whose own interest is prejudiced by an error has standing to appeal."). We will, therefore, address the merits of Royce's appeal.

Section 666 of the Texas Probate Code provides for a guardian's entitlement to reimbursement of attorneys' fees:

> A guardian is entitled to be reimbursed from the guardianship estate for all necessary and reasonable expenses incurred in performing any duty as a guardian, including reimbursement for the payment of reasonable attorney's fees necessarily incurred by the guardian in connection with the management of the estate or any other guardianship matter.

Tex. Prob. Code Ann. § 666 (West 2003). We review guardianship determinations under an abuse-of-discretion standard. *See In re Keller*, 233 S.W.3d 454, 459 (Tex. App.—Waco 2007, pet. denied). We view the evidence in the light most favorable to the trial court's decision. *See id.*

Royce contends that the procedure by which Edward was appointed as temporary guardian was flawed. Royce alleges that, in violation of the probate code, Mrs. Witte was not given prior notice or the opportunity to be present at the hearing, *see* Tex. Prob. Code Ann. § 875(f) (West Supp. 2009), Edward failed to present "substantial evidence" of Mrs. Witte's incapacity

3

because no physician's testimony was in the record at the time of appointment, *see id.* § 875(a), and Edward failed to give bond, *see id.* § 702(a) (West 2003). According to Royce, these alleged errors rendered Edward's appointment as temporary guardian void. *See In re Mask*, 198 S.W.3d 231, 235 (Tex. App.—San Antonio 2006, orig. proceeding). Royce then argues that since Edward's appointment was void, no attorneys' fees attributable to the temporary guardianship should be reimbursed.

Even if Royce is correct that procedural irregularities occurred, the district court's award of attorneys' fees was not an abuse of discretion. No attempt was made to declare the temporary guardianship void. Edward was appointed permanent guardian less than six months after his initial appointment as temporary guardian, and Royce does not challenge the procedure with respect to that appointment. Royce agreed to a settlement agreement under which no period of Edward's service as guardian was declared void and under which Mrs. Witte continued to have a guardian. Moreover, Randy Stewart, Mrs. Witte's attorney ad litem since Edward's application for temporary guardianship, testified that Edward's appointment as temporary guardian was "a proceeding that was very useful and was necessary for the things that were going on in Mrs. Witte's life."

Royce next asserts that no attorneys' fees should be recovered in connection with Edward's failed attempt to purchase the 204-acre ranch property while permanent guardian. Edward filed an application in the county court on February 6, 2007, to sell the property in his capacity as the guardian of Mrs. Witte's estate to himself individually as purchaser. The sale was confirmed by decree of the court on April 2, 2007. The same day, Stewart filed a motion to vacate the

4

court's decree based on Royce's not having received notice. *See* Tex. Prob. Code Ann. § 831(a), (c) (West Supp. 2009). According to Royce, Edward's motivation "from the outset" for applying for his appointment as guardian was to obtain the property, his purchase price was significantly below fair market value, and his failure to provide Royce notice of the sale reveals improper self-dealing. *See Tindall v. State*, 671 S.W.2d 691, 693-94 (Tex. App.—San Antonio 1984, writ ref'd n.r.e.) (affirming denial of reimbursement of attorneys' fees incurred in proceeding that occurred solely due to guardian's failure to provide required notice). Edward had sought to purchase the property for $1,800 per acre, but subsequent appraisals indicated a value closer to $2,500 per acre, and at the time of the June 17, 2008 hearing on attorneys' fees, there was a current bid on the property at $2,950 per acre.

However, based on the evidence, the district court did not abuse its discretion by authorizing the reimbursement of attorneys' fees incurred in connection with the cancelled sale of the ranch property. Edward admitted that stopping the sale of the property to third parties was a motive for seeking his appointment as temporary guardian. Edward testified that he learned Royce had drained their mother's bank account, and he was worried that if Royce sold their mother's remaining property and obtained the sale proceeds there would be no money left for their mother's care. As to the $1,800 purchase price, Edward testified that Royce had agreed that the two of them would obtain appraisals for the property and Edward could set a price between the appraisals. The two appraisals were for $1,500 and $2,000. Royce admitted to having made such agreement. As to Royce not receiving notice, both Edward and Michael Simmang—Edward's attorney at the time

5

of the sale[1]—testified that notices were sent by regular and certified mail, and Stewart testified that he had looked at the notices that were sent, but stopped the sale when he learned that Royce alleged he had not received notice.

Royce argues that Edward's placing their mother in a nursing home in violation of the district court's order is further cause for denying Edward's request for reimbursement of attorneys' fees. The October 5, 2006 order making the temporary guardianship permanent stated, "Ward shall not be placed in a nursing home without a doctor's order and the consent of all of Ward's children or order of this Court." In July 2007, Edward placed Mrs. Witte in a nursing home without Royce's consent or a court order.

Based on the evidence, we do not consider that such action makes the district court's authorizing the reimbursement of Edward's attorneys' fees an abuse of discretion. Edward testified that a social worker at the hospital had informed him that Mrs. Witte needed 24-hour care and Adult Protective Services would get involved if she was not sent to the nursing home that night. Edward also testified that he had felt he had no control over the decision, and that he had tried to call Royce, but "the answering machine was full." Jon Miller—Edward's attorney at the time in question—likewise testified that the social worker had characterized Mrs. Witte's going to a nursing home as "no matter what," and that he had also tried unsuccessfully to call Royce.

Royce also asserts that Edward pursued an alleged debt owed by Royce to Edward individually—a debt "completely unrelated to Mrs. Witte, her person, or her estate." Miller

[1] Simmang represented Edward in guardianship matters through June 2007, when Edward hired Jon Miller to assert claims against Royce on behalf of Mrs. Witte's estate. The district court approved the reimbursement of attorneys' fees attributable to both attorneys.

conceded that reimbursement for such claim would be improper. However, Miller also testified that the amount of fees incurred in connection with Edward's individual claim was approximately $200, and that such amount was encompassed within the $7,500 discount he applied to his fee request as an effort to speed the case along for the sake of Mrs. Witte's estate.

Royce asserts that Edward's appointment as guardian provided no benefit to Mrs. Witte's person or estate. However, there is sufficient evidence to the contrary. In September 2005, Mrs. Witte sold her house, retaining a life estate, and made gifts from the sale proceeds to each of her three children[2] and nine grandchildren. Following such gifts, Mrs. Witte had approximately $80,000 in her bank account. Royce was a signatory on the checking account. In December 2005, when Edward was also put on the bank account, he learned that there was less than $50 left. A review of the account records gave Edward reason to believe that the majority of the money had been withdrawn by Royce. In early 2006, Edward learned that the 204-acre ranch property had been listed for sale by Royce's son Derek. When Edward confronted Royce regarding the bank account and the ranch, Royce informed Edward that he would repay the money and take the ranch property "off the market." Soon thereafter, Edward learned from potential buyers that the property was still listed for sale, and Royce had not yet repaid money into the bank account. Edward then applied in the district court for guardianship, he testified, in order to protect his mother's interests in her bank account and the ranch property. After being appointed guardian, Edward learned that Royce had also used his mother's credit cards, including some purchases

---

[2] Mrs. Witte's daughter Diane passed away in 2007.

made after Edward had been appointed temporary guardian, and that interest was accruing on some of the credit card accounts as a result.

There is medical evidence in the record that Mrs. Witte had "moderate dementia" and needed "another party [to] take care of financial issues," and there was testimony to the effect that she had believed Royce had obtained only $6,000 from her bank account. In accordance with the terms of the settlement agreement, Royce repaid $67,136.04 to the successor guardian and admitted an additional liability of $27,863.96. Simmang (Edward's first attorney) testified that his fees were low, and Miller (the second attorney) testified that the amount of his fees was reasonable even prior to a $2,500 reduction and an additional $7,500 reduction. Both Stewart (Mrs. Witte's attorney ad litem) and Field (the successor guardian) agreed to the order reimbursing Edward's attorneys' fees.

Based on the evidence before the district court, we conclude that the district court did not abuse its discretion by ordering reimbursement from Mrs. Witte's guardianship estate of attorneys' fees and expenses incurred by Edward in connection with his performing duties as a guardian. We affirm the order of the district court.

_____

G. Alan Waldrop, Justice

Before Justices Patterson, Pemberton and Waldrop

Affirmed

Filed: February 3, 2010

8