# NO. 12-14-00249-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *IN THE GUARDIANSHIP OF* | § | *APPEAL FROM THE* |
| *JAMES DAVID ALLEN,* | § | *COUNTY COURT* |
| *AN INCAPACITATED PERSON* | § | *NACOGDOCHES COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Carl Reid Allen and Glenda Allen Bryson appeal from an order appointing Christy Kurrelmeyer Cross the permanent guardian of the person of James David Allen, the ward. Appellants raise three issues on appeal. We affirm.

## BACKGROUND

The ward is a fifty-four year old adult male who suffers from Down syndrome and autism. Appellants are the ward's siblings. Cross is the ward's stepsister.

In about 1965, the ward began residing in a state sponsored school. The ward's father was appointed as his guardian in 1978. The parties agree that the father never filed the required annual reports, had limited contact with the ward over the years, and is now unable to serve as guardian.

Cross first met the ward when she was a child after her mother married the ward's father. In the early 1990s, the ward was moved to a residential group home in Henderson at which time Cross began having more contact with him. Due to the declining health of her mother and the ward's father, Cross moved back into the family home in Mount Enterprise in the late 1990s. Eventually, she stayed with them only during the day to care for them and returned to her home in Cushing at night. The ward began living with Cross in her home in Cushing in April 2009. Cross has provided twenty-four hour care for the ward since then.

In July 2011, Cross filed an application to be appointed guardian of the person of the ward. After Cross's mother died in 2012, the ward's father moved to Georgia to live with Carl Reid Allen (Allen) and has had no contact with Cross or the ward since that time.

In January 2014, Appellants filed an objection to Cross's application. They also filed a joint application requesting that the trial court appoint Bryson as guardian of the person and Allen as guardian of the estate of the ward. After a bench trial, the court appointed Cross guardian of the person of the ward and denied Appellants' application. The trial court filed findings of fact and conclusions of law, and this appeal followed.

## DISQUALIFICATION OF APPELLANTS

In their second issue, Appellants contend the trial court abused its discretion in concluding they are disqualified to be appointed as guardians of the ward.[1]

### Standard of Review

A trial court has broad discretion in deciding the type of guardianship and identity of a guardian. *In re Guardianship of Boatsman*, 266 S.W.3d 80, 88 (Tex. App.—Fort Worth 2008, no pet.); *Trimble v. Tex. Dep't of Protective & Regulatory Serv.*, 981 S.W.2d 211, 214 (Tex. App.—Houston [14th Dist.] 1998, no pet.). Consequently, we review a guardianship determination under an abuse of discretion standard. *In re Keller*, 233 S.W.3d 454, 459 (Tex. App.—Waco 2007, pet. denied). A trial court abuses its discretion if it acts in an arbitrary or unreasonable manner without reference to guiding rules or principles. *Jelinek v. Casas*, 328 S.W.3d 526, 539 (Tex. 2010).

To determine whether the trial court abused its discretion, we consider the record as a whole. *Youngs v. Choice*, 868 S.W.2d 850, 853 (Tex. App.—Houston [14th Dist.] 1993, writ denied). We do not conduct an independent review of the findings of fact under traditional legal and factual sufficiency standards though legal and factual sufficiency are factors to consider in determining whether an abuse of discretion has occurred. *IKB Indus. (Nigeria) Ltd. v. Pro-Line Corp.*, 938 S.W.2d 440, 445 (Tex. 1997); *In re Keller*, 233 S.W.3d at 459-60. An abuse of discretion does not occur where the trial court bases its decision on conflicting evidence. *In re*

---

[1] In her brief, Cross makes several references to Appellants having been found "unsuitable" to be appointed guardians. *See* TEX. ESTATES CODE ANN. § 1104.352 (West 2014) ("A person may not be appointed guardian if the person is a person, institution, or corporation found by the court to be unsuitable."). The trial court's findings of fact and conclusions of law do not reflect that the trial court found Appellants "unsuitable."

*Guardianship of Alabraba*, 341 S.W.3d 577, 579 (Tex. App.—Amarillo 2011, no pet.). Likewise, an abuse of discretion does not occur as long as some evidence of substantive and probative character supports the trial court's decision. *Id.*

**Applicable Law**

A probate court appoints a guardian for an incapacitated person other than a minor according to the circumstances and considering the incapacitated person's best interest. TEX. ESTATES CODE ANN. § 1104.101 (West 2014). A person who is not disqualified under the Texas Estates Code is "eligible" to serve as guardian. *See id.* §§ 1104.351-.358 (West 2014); *Trimble*, 981 S.W.2d. at 215 (citing the predecessor disqualification section of the Texas Probate Code). A person who, because of inexperience, lack of education, or other good reason, is incapable of properly and prudently managing and controlling the person or estate of the ward is disqualified from serving as guardian. TEX. ESTATES CODE ANN. § 1104.351(2) (West 2014). The trial court views both the incapacitated person's needs and the applicant's ability to provide for those needs in deciding whether an applicant should be disqualified. *See Trimble*, 981 S.W.2d at 215-16.

**Guardian of the Person**

Relying on Section 1104.351(2), the trial court found that neither Bryson nor Allen had experience, training, or education in caring for a person with the ward's disabilities or conditions and therefore they were disqualified from being appointed as guardians. Appellants argue that, in making this finding, the trial court erroneously interpreted the word "incapable" as used in the statute to include those who lack prior medical education or experience in dealing with incapacitated adults.[2] *See* TEX. ESTATES CODE ANN. § 1104.351(2). They point out that Cross acknowledged she acquired the majority of her education and experience in dealing with the ward's disabilities and conditions after he came to live with her. Thus, they conclude that, at best, evidence of their lack of prior education or experience specific to the ward's disabilities and conditions amounts to a mere scintilla of evidence that they are incapable of caring for the ward. Appellants further assert that when the proper definition of "incapable" is applied, the record does not support the trial court's finding.

In construing a statute, we give undefined words their common, ordinary meaning unless the statute clearly indicates a different result. *William Marsh Rice Univ. v. Refaey*, 459 S.W.3d

---

[2] The trial court found that "[Cross] was CNA [certified nurse's aide] certified in 1978 and has participated in several training courses to train her to care for a person like [the ward] with his conditions or disabilities."

3

590, 593 (Tex. 2015) (per curiam). "Incapable" has been defined as "lacking capacity, ability, or qualification for the purpose or end in view." MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 628 (11th ed. 2011). Applying this definition, nothing in section 1104.351(2) suggests, as Appellants maintain, that the trial court should consider the possibility of future education, training, or experience in determining an applicant's eligibility to be appointed guardian. Moreover, we have found no authority to support this interpretation of the statute nor have Appellants cited any such authority.

When reviewed in its entirety, the record shows that the ward has an IQ of 19 and functions at the level of a two year old. He needs assistance with all of his daily activities and is semi-ambulatory. His ability to communicate is limited, and Cross testified that he has always been considered "nonresponsive, nonverbal." Cross stated that because of the ward's autism, "he doesn't have a time clock like we do." As a result, he sleeps for as little as half an hour or as much as two hours at a time, awakens for sometimes as long as an hour, and then goes back to sleep. Cross explained that "[a]ny time of day he wakes up, I have to be with him, you know." In sum, he requires constant and substantial care.

The record also shows that having a routine is important to someone with the ward's conditions and that the ward is well adjusted and relaxed in Cross's home. He knows where everything is in his room, "loves [his special] chair," and knows that Cross's residence is his home. The ward's caseworker testified that it is very important for someone with the ward's conditions to be familiar with his surroundings. She explained that moving such a person to a new place where his surroundings and routine are changed is "very detrimental."

Cross testified about the sensory difficulties related to autism. She recalled a time that the ward was changed from another group home, which "was upsetting to him and that set him back a lot." She stated that he stopped feeding himself, lost a lot of weight, "and that type of thing." When asked how long it had taken her working with the ward to get him to his present level of comfort and assurance, she responded, "Years." Cross related that, when she began working with the ward, he was unable to make any type of eye contact. Instead, he would "put his head down and rock, make really loud noises and things like that any time he was in a public situation with strangers." She testified that she would "hate for him to have to go back through that again" because he now looks forward to "going out to eat and things."

The record shows further that prior to 2009, Appellants visited "on many occasions" over the years but had relatively little contact with the ward because they did not live in Texas. Since Cross moved the ward into her home in 2009, Bryson has seen him only four or five times. Allen's contact with the ward has been less frequent. Neither Bryson nor Allen has seen the ward since their father moved to Georgia in 2012 to live with Allen.

The ward has never lived with Bryson or Allen, and neither Bryson nor Allen has provided care for him other than the care Bryson provided to the ward during day trips. The record shows that the care she provided was a mere fraction of the ward's required daily care. Though Appellants testified about their commitment to learn and their desire to provide the care the ward requires, they have no past experience in taking care of the ward or a person of similar disabilities.

Appellants testified that they plan for the ward to move into Bryson's home. Allen will assist Bryson by "doing anything she needs [him] to do within [his] capabilities." However, Appellants live approximately ninety miles apart. Appellants and their spouses currently work full time. Additionally, Bryson's husband is an ordained minister who is involved with church-related activities on weekends.

Bryson testified that she planned to quit her job if she was appointed guardian and devote her full attention to the ward's care. She also testified about her plans to remodel her home to accommodate the ward's needs, but those changes had not occurred at the time of trial. Moreover, there is nothing in the record about how much time would be needed to complete the planned remodeling. Bryson testified that she has read exhaustively, spoken to many people who specialize in caring for incapacitated persons, completed training to be qualified to run a foster home, and received first aid training. Yet, she has no actual experience in caring for individuals with the ward's substantial disabilities, needs, and physical limitations for extended periods. There is no evidence in the record about how Allen has prepared to care for the ward or to accommodate the ward in his home, if needed.

Neither Bryson nor Allen testified that they had anticipated how the ward might be affected if he was moved from the routine and familiarity of his current environment to a new state with new care givers, treating physicians, and visitors. Nor did they testify about how they planned to facilitate the ward's adaptation to these substantial changes in his life.

Based upon our review of the entire record, including the evidence set forth above, we hold that some substantive and probative evidence supports the trial court's finding that neither Bryson nor Allen has the experience, training, or education to provide for the ward's needs. *See* TEX. ESTATES CODE ANN. § 1104.351(2); *In re Guardianship of Alabraba*, 341 S.W.3d at 579. Therefore, the trial court did not abuse its discretion in concluding that Bryson and Allen are disqualified from being appointed as guardian of the person of the ward.

**Guardian of the Estate**

Appellants' discussion of their second issue includes the following paragraph:

> On a related note, the trial court made no factual finding, nor reached any legal conclusion, concerning its refusal to appoint Appellant Carl Reid Allen as guardian of the estate of James David Allen. As the order signed by the trial court only appointed Appellee Christy Kurrelmeyer Cross as guardian of the person (CR 51-53), there is presently no guardian of the estate of James David Allen.

We do not construe this paragraph as a challenge to the trial court's failure to appoint Allen guardian of the ward's estate. To the extent that Appellants intended it as such, they have inadequately briefed this portion of the issue and therefore have waived it. *See* TEX. R. APP. P. 38.1(i) ("The [appellant's] brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record."); *ERI Consulting Eng'rs, Inc. v. Swinnea*, 318 S.W.3d 867, 880 (Tex. 2010) ("The Texas Rules of Appellate Procedure require adequate briefing."); *Fredonia State Bank v. Gen. Am. Life Ins. Co.*, 881 S.W.2d 279, 284-85 (Tex. 1994) (holding appellate court has discretion to deem issues waived due to inadequate briefing).

We overrule Appellants' second issue.

## STATUTORY HIERARCHY FOR APPOINTMENT OF GUARDIAN

In their first issue, Appellants argue that the trial court abused its discretion by disregarding the mandatory statutory hierarchy in appointing a guardian for the ward.

If the court finds that two or more "eligible" persons are "equally" entitled to be appointed guardian of an incapacitated person, the estates code specifies which of those persons is preferred. *See* TEX. ESTATES CODE ANN. § 1104.102 (West 2014). Here, the trial court found that Appellants are disqualified from being appointed as guardian of the person of the ward, and we have overruled Appellants' challenge to that finding. Therefore, Appellants are not "eligible"

to be appointed in that capacity, and Section 1104.102 does not apply. Accordingly, we overrule Appellants' first issue. We need not address Appellants' third issue. *See* TEX. R. APP. P. 47.1.

## DISPOSITION

Having overruled Appellants' first and second issues, we ***affirm*** the trial court's order appointing Cross as guardian of the person of the ward.

**GREG NEELEY**
Justice

Opinion delivered November 18, 2015.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(PUBLISH)



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

### NOVEMBER 18, 2015

### NO. 12-14-00249-CV

### IN THE GUARDIANSHIP OF JAMES DAVID ALLEN,
### AN INCAPACITATED PERSON

Appeal from the County Court

of Nacogdoches County, Texas (Tr.Ct.No. GD1100257)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the trial court's order.

It is therefore ORDERED, ADJUDGED and DECREED that the trial court's order appointing Christy Kurrelmeyer Cross as guardian of the person of the ward **be in all things affirmed**, and that all costs of this appeal are hereby adjudged against the Appellants, **CARL REID ALLEN AND GLENDA ALLEN BRYSON**, for which execution may issue, and that this decision be certified to the court below for observance.

Greg Neeley, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*